UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 16-20187-CR-UU

UNITED STATES OF AMERICA

vs.

MANUEL PEREZ GONZALEZ,

    Defendant.

_____/

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorneys, hereby files this sentencing memorandum outlining its position with respect to the sentencing of the Defendant, Manuel Perez Gonzalez. The United States respectfully submits that a sentence of 1,200 months' term of imprisonment, called for by the Sentencing Guidelines, is appropriate. This term of imprisonment is a proportionate sentence to the gravity of the offense and the culpability of the offender. This term of imprisonment is necessary to reflect the seriousness of the Defendant's conduct and the impact his crimes have had on his victims. This term of imprisonment will best achieve necessary general and specific deterrence. This term of imprisonment will give the Defendant access to necessary treatment in an environment which will also protect the community from the Defendant. This term of imprisonment will also achieve the other factors set forth in 18 U.S.C. § 3553(a).

**The Nature and Circumstances of the Offense, the Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

The Defendant sought out and obtained his collection of horrific and sadistic images and videos depicting the sexual abuse of children for his sexual gratification. The damage the Defendant has done to the victims depicted in the images he collected and distributed should not

be understated. The magnitude of the Defendant's wrongdoing and harm caused is reflected by the trial testimony and exhibits as well as the thorough Presentence Investigation Report.

As noted in the Government's Response to the Defendant's Objection for a Guidelines Enhancement for Use of a Computer [ECF No. 138:7-8], it has been more than three decades since the Supreme Court decision in New York v. Ferber, 458 U.S. 747 (1982). The Ferber court discussed the very real harm that the distribution of child pornography causes its victims:

> The distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children ... [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation ...[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

Id. at 759-60 and n.10 (internal citations omitted).

Ferber was decided before the advent of digital cameras, long before gigabytes of information could be stored on a hard drive or a thumb drive, and before nearly every household in America had a computer connected to the Internet. When Ferber was decided, a producer of child pornography needed photographic equipment, access to a darkroom, and/or video equipment to ply his trade. Against this backdrop, the Supreme Court's observations regarding the harm caused by the distribution of child pornography ring truer today, when the images of innocent victims are easily and instantaneously transferred from one living room to another at the click of a button. The interest of the victims in this case, some toddlers, in a sentence that reflects the seriousness of child pornography offenses cannot be overstated. These interests require a significant sentence, not a significant variance.

Through file-sharing, the Defendant made hundreds of child pornography available for download for anybody with a computer and similar proclivities. By analogy, the Defendant set a giant pile of drugs on his front step. He let anyone take as much as they liked, as often as they liked. The pile never diminished, but instead grew as the Defendant added to it.[1] Instead of drugs, though, the Defendant peddled the rape and sexual abuse of children. By his repeated and chosen conduct, the Defendant perpetuated and encouraged these heinous crimes perpetrated against numbers of children. The Defendant did not just download child pornography, he distributed it.

Imposing serious penalties on those who seek, view, and save child pornography serves the interest of the victims portrayed in these images and videos. These victims are harmed not only when the child pornography is produced, but on a perpetual basis, as their images are endlessly re-distributed over the Internet. Downloading, sharing, and possessing child pornography are not "victimless" offenses. The victims depicted in the child pornography continue to suffer knowing that the most traumatic moments of their lives are endlessly recirculated, endlessly downloaded, endlessly viewed by individuals like the Defendant who take great pleasure in what caused those victims tremendous harm. Not all of these children have been identified, but they are nonetheless real and victimized by the Defendant's conduct.[2]

---

[1] To find material on the ARES peer-to-peer network, the user inputs search terms. The Defendant's ARES search term history showed he conducted searches on ARES and that terms consistent with seeking out child pornography were predominant. These terms include, as a small representative sample, "pthc," "pedo," and "5 y." See GX12 [ECF No. 134-11:1-14]. As more videos were downloaded by the Defendant, those videos generally became available to other pedophiles. And here, the forensics established that numerous videos were actually acquired from the Defendant's collection by his "peers." See GX 15 [ECF No. 134-14:1-51] (51 pages of files downloaded from the Defendant).

[2] See United States v. Shutic, 274 F.3d 1123, 1126 (7th Cir. 2001); United States v. Sherman, 268 F.3d 539, 547 (7th Cir. 2001) ("[C]hildren depicted in the pornography suffer a direct and primary emotional harm when another person possesses, receives or distributes the material."). Even a "'passive' consumer who merely receives or possesses the images directly contributes to this continuing victimization." Sherman, 268 F.3d at 545 (citations omitted). "Indeed, one of the reasons for criminalizing the 'mere' possession of child pornography is to create an

3

The Defendant was a *prolific* accumulator and trader of child pornography, which already situates him as a significant offender within the realm of those charged with similar conduct.

### The History and Characteristics of the Defendant

As stated in the Government's Response to the Objections to the PSI, the Defendant committed hands-on offenses prior to the majority of the offense conduct in this case. The fact that he committed those crimes subjects him to the pattern of activity enhancement. As far as culpability spectrum, this is beyond the mine run of child pornography offenses. As far as recidivism goes, his sexual interests in children – manifested in his molestation and the child pornography offenses he committed for years – bodes poorly for his prospects of rehabilitation.

Even if the Defendant posed a low risk, his criminal conduct in this case and the impact it has had on the victims deserves and demands a proportionate punishment. In balancing the § 3553 factors to formulate an appropriate sentence.

### Deterrence and Protection of the Public

The need for general deterrence is manifest; child pornography offenses proliferate and are unquestionably among the most serious crimes prosecuted in federal court. The availability of child pornography continues to grow exponentially over the Internet, and online communities such as the ARES P2P network, where child pornography is openly traded and exchanged, validate child sexual exploitation. Imposing serious penalties on individuals who drive the market for online child pornography and peddle it may deter other individuals from joining their ranks.

The need for specific deterrence and incapacitation to protect the community is also manifest. The Defendant's behavior relative to minor children that he had access to, and minor

---

incentive for the possessor to destroy the material, and alleviate some of these harms to the children depicted." <u>Sherman</u>, 268 F.3d at 547.

children he gained access to over the internet, require that in balancing the § 3553(a) factors, that this Court weigh with careful consideration its role at this critical juncture of the criminal process as the community's protector.  His family members, including his long-term girlfriend, knew about his abuse of minors (both hands-on and over the internet) and did not report it.  This is a negative factor for his prospect of rehabilitation in that setting and if he recidivates, he may be shielded from reporting if anyone becomes aware of future crimes.

### The Sentencing Guidelines

The Defendant, in his objections, essentially argued that the guidelines related to his convictions eviscerated the 18 U.S.C. § 3553(a) factors, notwithstanding that the Sentencing Commission recently adopted amendments to the § 2G2.2 guidelines in November 2016, and the amendments produce the Defendant's Guideline Range.  Implicit in this critique of the Guidelines is the assumption that his case is a "typical" child pornography case and that because some commentators and sentencing judges have been critical of guidelines in other cases, the guidelines should be afforded no deference in his case.  A downward variance is not warranted in this case—and certainly not a substantial variance—because the Defendant committed a very serious crime and within the spectrum of offenders, is among the worst.

Even after the guidelines have been subject to some scrutiny, numerous courts from across the country have upheld guideline sentences for child pornography cases, including published and unpublished decisions in the Eleventh Circuit.  See, e.g., United States v. Carpenter, 803 F.3d 1224, 1231 (11th Cir. 2015) (affirming within guidelines sentence, and noting: "[w]hile the court agreed that it could consider the criticisms of the Guidelines advanced in the Sentencing Commission's Report, it determined that it was not bound by them, and denied Carpenter's request for a downward variance). United States v. Schaefer, No. 15-11557, 2016

WL 1105376, at *3 (11th Cir. Mar. 22, 2016) ("This Court [in Cubero] has already concluded that the denial of a request for a downward variance based on policy disagreements with the § 2G2.2 enhancements alone does not render a sentence substantively unreasonable"). See also U.S. v. Williams, 2013 WL 6851125 (11th Cir. Dec. 31, 2013) (unpubl) (100 year sentence for production, distribution, possession, and possession of a firearm); and U.S. v. Runyan, 2013 WL 6511505 (11th Cir. Dec. 13, 2013) (unpubl) (240 month above-guideline sentence reasonable after convictions for receipt and sending obscene material to a minor). *United States v. Grigsby,* 749 F.3d 908, 911 (10th Cir. 2014) ("[T]his does not mean a within-guideline-range sentence based on a guideline lacking an empirical basis is necessarily unreasonable, and none of our sister circuits have ever so held. We agree with the Fifth Circuit that Congress and the Commission are responsible for altering the Guidelines."); United States v. McLaughlin, 760 F.3d 699, 707 (7th Cir. 2014) ("Congress and the Commission are responsible for altering the guidelines, and the absence of an empirical basis does not render a guidelines provision *per se* unreasonable or irrational."). United States v. Sigsbury, 817 F.3d 1114, 1115-16 (8th Cir. 2016) (collecting cases, upholding high-end (262 months) sentence after guilty plea).

  The government does not argue that all child pornography offenders should be sentenced within the guidelines or that a variance is never warranted.  Downward (or upward) variances may be appropriate after careful individualized assessment on a case-by-case basis.

  Every defendant appearing before a sentencing judge deserves individualized treatment and careful consideration of myriad factors because within offenses there are a spectrum of offenders.  The balance of factors relevant to sentencing for *this* Defendant require a severe sentence.

6

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court, as it does in every sentencing hearing, calculate the advisory guidelines range, use its discretion to determine what weight to give each § 3553(a) factor, and sentence Manuel Perez Gonzalez to a term of imprisonment of 1,200 months, followed by a lifetime of supervised release.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By:  /s/*Jonathan E. Kobrinski*
Jonathan E. Kobrinski, AUSA
Court ID No. A5501893
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9074 Fax: (305) 530-7976

By:  /s/*Ben Widlanski*
Ben Widlanski
Assistant United States Attorney
Court ID No. A5501885
U.S. Attorney's Office
99 N.E. 4th Street
Miami, FL 33132-2111
Tel: (305) 961-9342/ Fax: (305) 530-7976

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Jonathan Kobrinski*
Jonathan Kobrinski
Assistant United States Attorney