```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA
              Case No. 16-20187-Cr-UNGARO

UNITED STATES OF AMERICA,      )
                               )
              Plaintiff,       )
                               )
         -v-                   )
                               )
MANUEL PEREZ GONZALEZ,         )
                               ) Miami, Florida
              Defendant.       ) February 22, 2017
                               ) 1:37 p.m.
```

Pages 1-18

TRANSCRIPT OF SENTENCING PROCEEDINGS

BEFORE THE HONORABLE URSULA UNGARO

U.S. DISTRICT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Government | JONATHAN KOBRINSKI and BENJAMIN WIDLANSKI Assistant U.S. Attorneys 99 Northeast 4th Street Miami, Florida  33132-2111 |
| For the Defendant | STEFANIE C. MOON, ESQ. 1408 South Andrews Avenue Fort Lauderdale, Florida  33316 (Interpreters present) |
| REPORTED BY: (305) 523-5558 | WILLIAM G. ROMANISHIN, RMR, FCRR, CRR Official Court Reporter 400 North Miami Avenue Miami, Florida  33128 |

STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

```
 1                    (Call to order of the Court)

 2            THE COURT:  Okay.  Good afternoon.

 3            So the case before the Court is the United States

 4     versus Manuel Perez Gonzalez, 16-20187-Criminal.

 5            Who's here for the United States?

 6            MR. KOBRINSKI:  Good afternoon, Your Honor.  Jonathan

 7     Kobrinski and Ben Widlanski, Assistant United States

 8     Attorneys.  Mr. Widlanski just stepped out briefly.  And then

 9     Special Agent Mike Schnaider.

10            THE COURT:  Okay.  Fine.  You can have a seat and the

11     audience can have a seat.

12            Who's here from Probation?

13            THE PROBATION OFFICER:  Good afternoon, Your Honor.

14     Sara Garcia with Probation.

15            THE COURT:  Okay.  Thank you.

16            And who's here for Mr. Perez Gonzalez?

17            MS. MOON:  Good afternoon, Judge.  Stephanie Moon on

18     behalf of Manuel Perez Gonzalez, seated with me at counsel

19     table with the aid of the interpreter.

20            THE COURT:  And have you been over the PSI with your

21     client?

22            MS. MOON:  Yes.

23            THE COURT:  And do you know of any reason we

24     shouldn't proceed?

25            MR. KOBRINSKI:  No.
```

1          THE COURT:  Okay.  Thanks.  You can have a seat.

2          So, according to Probation, the total offense level

3     is a 43 and the criminal history category is 1.  So basically

4     the guidelines are, depending on how you want to look at it,

5     life or 1,200 months.

6          There were objections to the PSI that were filed.  A

7     number of the objections are factual objections that the Court

8     does not have to reach in order to finalize the guideline

9     calculation.  The law is that the Court has to determine the

10    guidelines and then apply the 3553 factors.

11         But whatever the guidelines are in this case -- and

12    the Court is going to do that -- the Court is sufficiently

13    familiar with the case to believe that, minimally, a sentence

14    of life would be the sentence which is required in this case

15    because of the nature of the defendant's conduct and his lack

16    of respect for the law and the fact that he has engaged in

17    conduct which suggests that he is a danger to society and

18    quite likely a pedophiliac.

19         So let's settle the guidelines and then let's figure

20    out whether life is enough or whether 1,200 months is enough,

21    or something in between, whatever that might be.

22         Again, Ms. Moon filed a number of objections.  I'm

23    not going to reach the factual objections because I don't

24    think that it's necessary to settle the guidelines.

25         So the first legal objection, which is a mixed

```
 1    question of law and fact, is the defendant's contention that
 2    the relevant conduct should be limited to, I guess, the
 3    offense period stated in the indictment; it shouldn't reach
 4    back to 2013.
 5              And I do not agree with that position because it
 6    appears that there is a pattern of repetitive conduct that's,
 7    I think, apparent from just the facts as recited in the PSI as
 8    well as the evidence which was presented during the trial.  So
 9    I'm rejecting that objection.
10              There's also an objection to the enhancement for
11    obstruction of justice.  I also agree with the Government that
12    that objection is not well taken.  It is my view that the
13    defendant did everything he could to obstruct the prosecution
14    in this case, including feigning mental illness and then
15    subsequently he tried to manipulate the Court through these
16    efforts to represent himself and then changing his mind and
17    demanding continuances and so forth, and then he took the
18    stand during the trial and lied.  So I think the obstruction
19    of justice enhancement is appropriate if for no other reason
20    than because he lied during the trial but also because of
21    these other factors.
22              Then we get to the specific offense characteristics.
23    The defendant used a peer-to-peer program, and as I understand
24    it under the Eleventh Circuit law, the fact is that he knew he
25    was using a peer-to-peer program.  He was a veteran of using
```

1   the peer-to-peer program and, therefore, he obviously must

2   have known that he was distributing child pornography through

3   his use of the peer-to-peer program.

4           The next issue raised by the defense is the issue of

5   sadistic or masochistic conduct.

6           Now, I know in the PSI that there is a reference to

7   at least one of the videos containing bondage.

8           Can you get into this a little bit more for me,

9   Mr. Kobrinski, as to what's in the record on this issue?

10          MR. KOBRINSKI:  Your Honor, just as I understand the

11  defense objection, it's not that the materials don't contain

12  sadistic and masochistic material.  It's that the defendant --

13          THE COURT:  Oh, there's no intent.

14          MR. KOBRINSKI:  And that's not required, the

15  application note.  That was the law of the circuit in 1998,

16  but the application note postdates that case that Ms. Moon

17  cited and it makes clear that intent isn't required.  And then

18  also there's plenty of evidence in the record that that's

19  precisely what his intent was, was to seek out that specific

20  type of material.

21          THE COURT:  Okay.  So there is more than just what's

22  referenced in the PSI.

23          MR. KOBRINSKI:  Yes.

24          THE COURT:  Because I think I only found one

25  reference in the PSI to bondage.

1    MR. KOBRINSKI:  There's one video that was

2    specifically recovered from his laptop that had bondage

3    involving a prepubescent female who was forced to perform

4    sexual acts while bound.  But there's also through his

5    download history numerous other videos and file titles that

6    are suggestive of that precise same type of material, and

7    those are Government exhibits, the file titles.  But those

8    specific videos weren't recovered from his material.

9         THE COURT:  Okay.  So do you want to add anything on

10   this subject, Ms. Moon, other than what's in your objection?

11        MS. MOON:  No, Your Honor.

12        THE COURT:  Okay.  Fine.

13        So, again, the intent is inferred from the possession

14   of the materials which contain the sadomasochistic content

15   under the law.

16        Now, the next issue is the issue of the pattern of

17   activity which results, I think, in a five-level enhancement.

18        Do you want to go through the Government's position

19   on that, Mr. Kobrinski?

20        MR. KOBRINSKI:  Yes, Your Honor.

21        I think Probation correctly determined that it

22   applies.  The minor victim, who's here today to observe the

23   sentencing, she informed me that she doesn't wish to be heard

24   but she did want to observe the process.  But she testified

25   before Your Honor and Your Honor had the ability to determine

1    her credibility, and then Mr. Perez Gonzalez also testified

2    before Your Honor and denied any misconduct with regard to any

3    minor children, that he never molested any children.  You had

4    an opportunity to review his credibility on that matter as

5    well.

6          So based on the minor victim's testimony, that

7    enhancement applies, because on two separate occasions he

8    sexually abused her, engaged in illicit sexual conduct on a

9    minor, both times forcibly doing so, and for those reasons, on

10   the record, there's obviously also other evidence that the

11   Court doesn't have before it regarding a cooperating defendant

12   and the defendant making other admissions that were detailed

13   in other filings.

14         But we'd ask that the Court make the finding for the

15   pattern of activity, based on the minor victim who testified

16   under oath at the trial, based on her testimony rather than

17   those other allegations which were never brought before this

18   Court in the form of evidence in the trial or here at the

19   sentencing.

20         THE COURT:  Okay.  I mean, I just want to make sure

21   whatever the requirements are for this enhancement, because

22   it's not something I commonly see to have been satisfied.  So

23   under 2G2.2(5), are there application notes -- here we go.

24   Pattern of activity involving the sexual abuse or exploitation

25   of a minor means any combination of two or more separate

1    instances of the sexual abuse or sexual exploitation of a

2    minor by the defendant, whether or not the abuse or

3    exploitation occurred during the course of the offense,

4    involved the same minor or resulted in a conviction for such

5    conduct.

6              So what the Government is relying on are the two

7    instances that we are aware of from the trial testimony of --

8              The victim is not a minor anymore, right?

9              MR. KOBRINSKI:  She is, Your Honor.

10             THE COURT:  Oh, she is?  She's 16?

11             MR. KOBRINSKI:  Correct, Your Honor.

12             THE COURT:  Ah, okay.

13             -- the minor victim's testimony at the time of the

14   trial.

15             What do you want to say about that, Ms. Moon, other

16   than what's already in your objections, anything?

17             MS. MOON:  No, Your Honor.

18             THE COURT:  All right.  Well, I think that because of

19   the way "pattern of activity" is defined or explained in the

20   application notes, that resolves the issue, and based on the

21   testimony of the victim, which I believe to have been

22   credible, that would amount to the pattern of activity as

23   described in 2G2.2(b)(5).

24             Then we have the use of a computer.  You know, there

25   have been times when I have questioned this enhancement, since

1    this is the way that child pornography is generally

2    disseminated now, in any event, and this is the way people

3    come into possession of it.  But in this case there is

4    extensive use of computers and a long history of conduct.  So

5    I am going to leave this enhancement alone in this case and

6    apply it.

7         Then I think the remaining objections have to do with

8    whether or not the guidelines have been calculated properly or

9    not, depending on whether or not the Court sustained any of

10   the objections, which the Court is not doing.

11        MS. MOON:  Correct, Your Honor.

12        THE COURT:  So that moots those remaining objections.

13        So let's look at the way we get to 1,200 months,

14   because I think Ms. Moon describes this as an upward variance

15   in her objections, but I'm not sure it is an upward variance.

16        What Probation said was that, as to each of Counts 1,

17   2 and 3, the minimum term of imprisonment is five years and

18   the maximum is 20.  As to each of Counts 4 and 5, the maximum

19   term of imprisonment is 20 years.

20        And then the PSI says:  Based upon a total offense

21   level of 43 -- which the Court is finding is the correct

22   offense level -- and a criminal history category of 1, the

23   guideline imprisonment range is life.

24        However, the statutorily authorized maximum sentences

25   are less than the maximum of the applicable guideline range.

1   So, in other words, what Probation is saying is that if you

2   can put the sentence in months, even if it's a million months,

3   it's still less than life and, therefore, the statutory

4   sentence controls.  It's a little artificial, right.

5           Mr. Perez Gonzalez is how old?  40?  More than 40?

6           THE PROBATION OFFICER:  39, Your Honor.

7           THE COURT:  39.  So he's not likely to live 139

8   years, hopefully.

9           But, in any event, the way Probation has phrased

10  this, this is not an upward departure or an upward variance.

11  This is the guideline sentence.

12          So what's the Government's position on what the

13  sentence should be?

14          MR. KOBRINSKI:  Your Honor, the Government's position

15  is that you should impose a guideline sentence.  It should be

16  100 years, the 1,200 months.  The basis is what the Court has

17  already articulated:  The lack of respect for the law; the

18  danger that he poses; he's irredeemable; there's no prospect

19  for rehabilitation; he's not shown any remorse, all other

20  factors that you stated.

21          And then, while it is somewhat of an artifice, there

22  is an expressive value to giving, and it would serve general

23  deterrence to give, the guideline sentence and any variance

24  just to make it in a term that's, I guess, on the normal

25  scale, life expectancy, which would be an artifice too, to try

1    to reduce it to 80 years instead of 100.

2           THE COURT:  Well, as we all know, though, life in the

3    federal prison system is life without parole.

4           MR. KOBRINSKI:  Exactly, Your Honor.

5           THE COURT:  Right.  So there's no good time off of a

6    life sentence.  Life is life.

7           MR. KOBRINSKI:  Whereas there will be a good time off

8    of -- the sentence here won't be life.  It will be a term of

9    imprisonment of years, because you statutorily can't give a

10   life sentence.  So there will be good time for this sentence.

11          THE COURT:  Oh, okay.  Well, that's a good point.

12   So, in other words, you're saying I can't give -- well, I can

13   stack the sentences.  But no matter, even if I stack the

14   sentences, I can't give a life sentence?

15          MR. KOBRINSKI:  That's right, Your Honor.

16          THE COURT:  Ah, okay.  Now it's all becoming clear to

17   me.  It was not clear to me until this moment.  But now I see

18   what the problem is.  So the problem is that I can't impose a

19   life sentence because the statutory maximum is not life.

20   Ah-hah.  Okay.  Got it.

21          So, Ms. Moon, what do you want to say?

22          MS. MOON:  I believe Mr. Perez Gonzalez wants to

23   address the Court directly, Your Honor.  I have made all of

24   the appropriate or at least what I determined to be

25   appropriate legal arguments in my pleadings.

1          THE COURT:  Okay.  Thank you.

2          Okay.  What would you like to say, Mr. Perez

3     Gonzalez.

4          THE DEFENDANT (through the interpreter):  Thank you,

5     Your Honor, for everything you have done in my case, from the

6     beginning to the end, everything that happened since 2015, and

7     really, the most important thing is how the Government has

8     addressed me and my family, practically things like what my

9     wife, Marlen Mayorga, mentioned during her testimony in trial,

10    in other words, the excessive authority that they used in this

11    case, the SWAT team.

12         As you know, it was on October 22, 2015, at 6:00

13    a.m., they broke down the door.  They came in.  They hit me.

14    During eight hours my whole family, eight of us, we were held,

15    tied down, without eating or drinking water, including three

16    Chihuahua what puppies that also were without food or water.

17         Your Honor, I mention this more than anything else

18    just because these are things that the Government does and

19    that they do not want to have them mentioned in a trial, for

20    example.

21         We make mistakes, like I do, like the Court has, from

22    the beginning, the prosecution, they have committed mistakes.

23    I am not pointing at anyone because we all make mistakes as

24    human beings.  But I know that up there there is a God that

25    loves us and knows all of us.

1        Your Honor, I decided to go to trial not because I

2  wanted to or because I think I am a macho man, but because I

3  really saw so many mistakes that were committed by the

4  Government during their operation.

5        During the whole process I went through many

6  difficult situations, and you know that, Your Honor.  But it's

7  been to defend myself, because I know that there are laws in

8  this country and I know they are there to condemn me but also

9  to defend me.

10        I do believe in God and I love Him very much and I

11  love everybody who's here also because God has taught me to do

12  that.

13        My son is here and I asked him to be here, also my

14  family.  Maybe they were not all able to be here, but I do

15  have a large family.  They know who I am, I know who I am, and

16  God knows who I am.

17        I thank you for everything and that was it.  God

18  bless you, Your Honor, and I also want to thank my attorney

19  because I know that she also helped me a lot, the interpreter,

20  the marshals, also the prosecutor.  I love them all.  Also,

21  the secretary, everyone.  Thank you also to the lady from

22  Probation.  Thank you very much.

23        THE COURT:  Okay.  Well, thank you.

24        So, if you and your lawyer will stand, the Court is

25  going to impose sentence at this time.

1          The Court has considered the statements of the

2     parties, the presentence report containing the advisory

3     guidelines and the statutory factors.  It is the finding of

4     the Court that the defendant is not able to pay a fine in

5     addition to restitution, which is mandatory.

6          For the reasons already stated, the Court is going to

7     impose the guideline sentence.

8          It is the judgment of the Court that the defendant,

9     Manuel Emilio Perez Gonzalez, is committed to the Bureau of

10    Prisons to be imprisoned for a total of 1,200 months.  This

11    sentence consists of consecutive term of 240 months as to each

12    of Counts 1 through 5.

13         It is further ordered that the victims' losses are

14    not yet ascertainable.  Therefore, the Court is setting a

15    restitution hearing for --

16         THE COURTROOM DEPUTY:  April 21 at 2:00 p.m.

17         THE COURT:  -- April 21, 2017, at 2:00 p.m.

18         Is that a problem, Ms. Moon?

19         MS. MOON:  Yes, Your Honor.  I'll be in trial before

20    Judge Cooke at that time.  We begin on the 7th and it's

21    expected to last four to six weeks.

22         THE COURT:  Okay.  Let's just put it in May.

23         THE COURTROOM DEPUTY:  Let's try May 5th.

24         THE COURT:  Is May 5th acceptable to you?  Because it

25    has to be within 90 days.  That may be beyond the 90 days.

1          MS. MOON:  Okay.  That's fine.

2          THE COURT:  You're not concerned with any deadline?

3  You're waiving any deadline, is that right, Ms. Moon?

4          MS. MOON:  I'll ask Judge Cooke if she'll let me go.

5          THE COURT:  What do you want to say?

6          MR. KOBRINSKI:  Just that Judge Cooke doesn't have

7  trials on Wednesdays, if the Court has any days on Wednesday.

8          THE COURT:  All right.  We'll set it on Wednesday.

9          THE COURTROOM DEPUTY:  April 26th at 2:00 p.m.

10          THE COURT:  April 26th at 2:00 p.m.

11          Once restitution is ordered by the Court the

12  defendant shall pay restitution in the following manner:

13          During the period of incarceration payments shall be

14  made as follows.  If the defendant earns wages in a Federal

15  Prison Industries UNICOR job, then the defendant must pay 50

16  percent of wages earned toward the financial obligations

17  imposed by this judgment in a criminal case.  If the defendant

18  does not work in a UNICOR job, then the defendant must pay a

19  minimum of $25 per quarter toward the financial obligations

20  imposed in this order.

21          Upon release from incarceration the defendant shall

22  pay restitution at the rate of ten percent of monthly gross

23  earnings until such time as the Court may alter the payment

24  schedule in the interest of justice.  The United States Bureau

25  of Prisons, the U.S. Probation Office and the U.S. Attorney's

1   Office shall monitor the payment of restitution and report to

2   the Court any material change in the defendant's ability to

3   pay.

4          These payments do not preclude the Government from

5   using any other anticipated or unexpected financial gains,

6   assets or income of the defendant to satisfy the restitution

7   obligations.

8          The restitution shall be made payable to the Clerk of

9   the United States Courts and forwarded to the United States

10  Clerk's Office, Attention:  Financial Section, 400 North Miami

11  Avenue, Room 8N09, Miami, Florida, 33128.  And then the

12  restitution will be forwarded by the Clerk of the Court to the

13  victims.

14         And upon release from imprisonment the defendant

15  shall be placed on supervised release for a total of 25 years

16  as to each of Counts 1 through 5, all such terms to be served

17  concurrently.  Within 72 hours of release from the custody of

18  the Bureau of Prisons the defendant shall report in person to

19  the probation office in the district to which the defendant is

20  released.

21         While on supervised release the defendant shall not

22  commit any crimes; shall be prohibited from possessing a

23  firearm or other dangerous device; shall not possess a

24  controlled substance; shall cooperate in the collection of

25  DNA, and shall comply with the standard conditions of

1   supervised release including the following special

2   conditions:

3           Surrendering to Immigration for removal after

4   imprisonment; data encryption restriction; computer modem

5   restriction; computer possession restriction; employer

6   computer restriction disclosure; permissible search; no

7   contact with minors; no involvement in youth organizations;

8   sex offender treatment; restriction from possession of sexual

9   materials; Adam Walsh Act search condition; sex offender

10  registration; financial disclosure requirement; and disclosure

11  of telephone records, all as noted in Part G of the

12  presentence report.

13          It is further ordered that the defendant shall

14  immediately pay to the United States a special assessment of

15  $100 as to each of Counts 1 through 5, for a total of $500.

16          So the total sentence is 1,200 months' imprisonment,

17  restitution to be determined, 25-year supervised release, and

18  a $500 assessment.

19          And now that sentence has been imposed, does the

20  defendant or his counsel object to the Court's findings of

21  fact or to the manner in which sentence was pronounced?

22          MS. MOON:  The defendant objects.

23          THE COURT:  All right.  So I'm assuming all the

24  objections which were previously stated are being reasserted.

25          MS. MOON:  Yes, Your Honor.

1        THE COURT:  All right.  So, Mr. Perez Gonzalez, you

2   have the right to appeal your conviction and sentence.  If you

3   want to take an appeal, the notice of appeal has to be filed

4   within 14 days of entry of the judgment of conviction.

5        Also, if you wish to take an appeal and you cannot

6   afford a lawyer to represent you on appeal or cannot afford

7   the costs of the appeal, the Court will waive the costs and

8   appoint a lawyer upon the filing of a proper motion.

9        Anything else for the Court on this matter at this

10  time?

11       MR. KOBRINSKI:  Not from the Government, Your Honor.

12       THE COURT:  Okay.  Fine.  Thank you very much.

13       MS. MOON:  Thank you, Your Honor.

14       *    *    *    *    *    *    *    *    *    *

15              C E R T I F I C A T E

16

17     I certify that the foregoing is a correct transcript

18  from the record of proceedings in the above-entitled matter.

19

20

21

22

23

24

25