1              IN THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
2
                         MIAMI DIVISION
3
                  CASE NO.:  16-cr-20187-UU-1
4

5

6

7   UNITED STATES OF AMERICA,      )
                                   )
8                 Plaintiff,       )
     v.                            )
9                                  )              March 15, 2016
     MANUEL E. PEREZ GONZALEZ,     )
10                                 )
                  Defendant.       )              Pages 1 - 29
11   _____/

12

13

14

15              DETENTION HEARING PROCEEDINGS

16        BEFORE THE HONORABLE PATRICK A. WHITE
                UNITED STATES MAGISTRATE JUDGE
17

18

19

20
     APPEARANCES:
21

22   On behalf of the Plaintiff:

23                         UNITED STATES ATTORNEY'S OFFICE
                           Miami Special Prosecutions Section
24                         99 Northeast 4th Street, Room 806,
                           Miami, FL 33132
25                         BY:  IGNACIO JESUS VAZQUEZ, JR., AUSA

```
 1

 2  APPEARANCES CONTINUED:

 3  On behalf of the Defendant:

 4                          RICHARD BARON & ASSOCIATES
                            501 NE 1st Avenue
 5                          Suite 201,
                            Miami, FL 33132
 6                          BY:  RAMON SARMIENTO, ESQ.

 7

 8  Transcribed by:

 9                          BONNIE JOY LEWIS, R.P.R.
                            7001 SW 13 Street
10                          Pembroke Pines, FL  33023
                            954-985-8875
11                          caselawrptg@gmail.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                         I N D E X.

2  <u>THE WITNESS</u>:                                <u>PAGE</u>:

3
   **SPECIAL AGENT MICHAEL SCHNEIDER**
4

5  Cross Examination by Mr. Sarmiento:              9

6  Redirect Examination by Mr. Vazquez:            15

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Thereupon, the following proceeding was held:)

2          United States of America versus Perez Gonzalez; Case

3 Number 16-20187.

4          MR. VAZQUEZ:  Ignacio Vazquez on behalf of the United

5 States.

6          THE COURT:  Okay.

7          MR. SARMIENTO:  Good morning, Your Honor.  Ray

8 Sarmiento on behalf of the Defendant.

9          THE COURT:  Okay.  We are here for a pretrial

10 detention hearing.

11          Do the parties have an agreement with respect to this

12 matter?

13          MR. VAZQUEZ:  We do not, Your Honor.

14          THE COURT:  Do you wish to proceed?

15          MR. VAZQUEZ:  Yes, Your Honor.

16          THE COURT:  How do you wish to proceed?

17          MR. VAZQUEZ:  Your Honor, the Government wishes to

18 proceed by proffer.

19          THE COURT:  Do you have an agent here?

20          MR. VAZQUEZ:  Yes, Your Honor.  Michael Schneider with

21 the Secret Service.

22          THE COURT:  You may proceed.

23          MR. VAZQUEZ:  Your Honor, this investigation commenced

24 following the identification of an IP internet protocol address

25 that was suspected of downloading child pornography through a

1   peer-to-peer sharing network.

2          In the course of the investigation, agents identified

3   multiple files that were downloaded.  And then, commenced

4   downloading pornography themselves from that peer-to-peer

5   account to verify that it was distributing in violation of the

6   United States law.

7          In the course of the investigation an address was

8   located, which was attached or linked to the IP address in

9   Miami-Dade County.  A search warrant was authorized by U.S.

10  Magistrate Judge Torres and executed on October 22nd of 2015.

11         On the day of the search warrant, agents interviewed

12  multiple persons at the targeted address.  One of them was

13  Mayorga Mueller, an associate of the Defendant and living

14  partner.

15         They also identified an individual named Germianger

16  Lagos.  These witnesses identified to Government agents that

17  the Defendant, Mr. Perez, was in possession of child

18  pornography in the past.

19         In fact, they had confronted him about his interest in

20  child pornography.  In a prior interest in child pornography,

21  the Defendant shipped a computer to Nicaragua that was involved

22  in his downloads in the past.

23         Through the course of the interviews, agents spoke

24  with an additional witness who lent their computer to Mr.

25  Perez.  And advised that when Perez Gonzalez took possession of

1  the computer, it took a long time for them to get it back.

2          During an initial forensic preview of the tenant's

3  computer and the computer found underneath Perez Gonzalez' bed,

4  it was determined that child pornography was inside these

5  media.  It had been downloaded into these computers.  Perez

6  Gonzalez was interviewed.

7          Perez Gonzalez said that for the computer that was

8  found underneath his bed, it had been idle for an extended

9  period of time.  It had not been used.  It belonged to a son of

10 his who was out-of-state.

11         The forensic preview confirmed that this statement to

12 agents was false.  The computer had been used recently prior to

13 the search warrant execution.

14         In addition, a compact disk was located in Perez

15 Gonzalez' entertainment unit, also inside his bedroom, and it

16 found that it was a backup that contained child pornography.

17         Agents continued their investigation.  No arrests were

18 made.  And a detailed forensic analysis of the computers, the

19 seized computers, was conducted.

20         During this detailed analysis, agents located that at

21 times Mr. Perez Gonzalez was engaged in Internet chats through

22 the program Skype.

23         And on occasion, after he terminated a Skype chat in

24 which he identified himself, child pornography began to flow

25 into his computer through the peer-to-peer network.  This was

1  in contrast to his representation to agents that the computer

2  was idle.

3         In addition to that, agents located that these

4  particular peer-to-peer network that he was using was a paid

5  for service.  And he used his credit card and linked his home

6  address, and another address that he was associated with, to

7  the ability to access the peer-to-peer network, which gave him

8  access to the child pornography.

9         The Government interviewed a witness and a witness

10  told them that in the course of confronting, a prior episode of

11  confronting Mr. Perez Gonzalez about child pornography, there

12  was a physical fight.

13         And Mr. Perez Gonzalez ultimately agreed not to press

14  charges against that witness if his involvement in child

15  pornography was not disclosed to authorities.

16         As the case continued, agents also made contact with

17  other family members associated with the persons who were

18  interviewed.

19         And this, Your Honor, is offered solely for the

20  purpose of a danger to the community.  It is not a factual

21  representation as far as admissible evidence, but it is

22  something I told Defense counsel I would proffer.

23         In the course of this interview, agents were told that

24  there were allegations by family members that this Defendant

25  had inappropriately touched more than one minor child.

1          The Defendant has ties outside of the --

2          THE COURT:  When you say touched more than one child,

3   what do you mean?

4          MR. VAZQUEZ:  The information from these family

5   members was that there is a member of the family who was taking

6   care of two minors who are underage, under the age of ten.  And

7   that this family member told another family member that those

8   children reported inappropriate sexual touching.

9          And that was something that is known within the family

10  that these allegations were out there.  And it is solely

11  offered for our danger to the community assessment because this

12  individual, this family member, I understand has some sort of

13  mental or memory challenges.

14         And that the family did not think anything of it

15  before, I guess, this child pornography search warrant returned

16  was recovered, but it was something that the agents were told.

17  And I think that I would advance it to the Court for the

18  Court's consideration to give it whatever weight the Court

19  thinks is proper to give it.

20         The Defendant has ties outside of the state.  He has

21  ties to Nicaragua.  He has traveled.  The Defendant has also,

22  according to witnesses, shipped material that contains child

23  pornography outside of the state to avoid detection.

24         And based on the statutory presumption, which is at

25  issue here, the Government believes that detention is proper

1  based on risk of flight and danger to the community.

2          THE COURT:  Okay.  Do you have a witness?

3          MR. VAZQUEZ:  Yes.  The United States Secret Service

4  Michael Schneider, Special Agent.

5  (Witness sworn.)

6          THE COURTROOM DEPUTY:  State your name and spell your

7  last name for the record.

8          THE WITNESS:  My name is Michael M. Schneider;

9  S-C-H-N-E-I-D-E-R.

10          THE COURTROOM DEPUTY:  Thank you.

11          THE COURT:  You may proceed.

12          MICHAEL SCHNEIDER, GOVERNMENT'S WITNESS SWORN

13                      CROSS EXAMINATION

14  BY MR. SARMIENTO:

15  Q.  Good afternoon, Special Agent.  My name is Ray Sarmiento.

16  I represent Manuel Perez Gonzalez.

17  A.  **Nice to meet you**.

18  Q.  Likewise.

19      I want to draw your attention to the complaint that has

20  been filed in this case.

21      You drafted that complaint, sir?

22  A.  **Yes, sir**.

23  Q.  I want to draw your attention to Paragraphs 10 and 11,

24  specifically of the complaint where allegations of sexual

25  inappropriate touching of a child were alleged.

1  A.  **Yes, sir.**

2  Q.   Those allegations don't refer to my client, but refer to

3  someone else who was accused of inappropriate touching; isn't

4  that correct?

5  A.  **That is correct.**

6  Q.   Okay.  Now, currently, no children live in the house where

7  my client resides; is that correct?

8  A.  **At this moment, no.**

9  Q.   Now, were you part of the team that executed the search

10  warrant, in this case back, in October of 2015?

11  A.  **Yes, I was.**

12  Q.   Now, during the execution of the search warrant did you

13  speak with my client?

14  A.  **Yes, I did.**

15  Q.   And did you advise him what the search warrant was

16  involving?  What the investigation was involving?

17  A.  **Yes, sir.**

18  Q.   Okay.  So he was aware that this was a child pornography

19  investigation, correct?

20  A.  **Yes, sir.**

21  Q.   Okay.  And since then, my client still resides in the same

22  residence; is that correct?

23  A.  **As far as I know, from the time of the search warrant when**

24  **we arrested him, he has been at that same residence.**

25  Q.   Okay.  And he is still employed at the same employment?

1 A.   **That I do not know.**

2 Q.   Okay.  And I also spoke to you back in October of 2015 when

3 this search warrant was executed; isn't that correct?

4 A.   **Yes.  You called me and told me you were representing him.**

5 Q.   Correct.

6      And I had advised you that I wanted to assist you in the

7 investigation and I was willing to voluntarily surrender my

8 client if need be; is that correct?

9 A.   **Correct.**

10 Q.   During the course of your investigation, did you become

11 aware that various people lived in the residence that my client

12 resided in?

13 A.   **Yes.**

14 Q.   Okay.  Somewhere between six to seven adults lived in that

15 house; isn't that correct?

16 A.   **Well, at the time of the investigation, I believe there**

17 **were six people linked to that home address.  I couldn't say**

18 **for sure that all lived there, but I was confident that at**

19 **least four lived there.**

20 Q.   Okay.  And did my client and other witnesses tell you of a

21 tenant named Sebastian that lived in that house?

22 A.   **He was there at the time of the search warrant.**

23 Q.   Oh, fantastic.

24      And so he resided in that house during the dates that these

25 pornographic images were downloaded; isn't that correct?

1  A.  **I don't know the extent of how long he lived there.**

2      **I know that he was there the day of the search warrant and**

3  **he was not there when we arrested Mr. Perez Gonzalez this past**

4  **Friday.**

5  Q.  Now, regarding the accusations of possessing child

6  pornography, my client denied possessing or having any

7  knowledge regarding these images; is that correct?

8  A.  **That is correct.**

9  Q.  Now, the computer in question where the images were

10  actually recovered, that computer is not registered to my

11  client, is it?

12  A.  **There are two computers.  Which computer are you speaking**

13  **of?**

14  Q.  There's an HP mini laptop that was recovered underneath a

15  bed where the images were actually --

16  A.  **Correct.  When you say the username is a son's name,**

17  **Ishmael.**

18  Q.  And who is that computer registered to?

19  A.  **The username.  It would be Ishmael, his son.**

20  Q.  So it is not my client's name, correct?

21  A.  **On the registration -- on the actual username, no, it is**

22  **not his name on it.**

23  Q.  Now, there is a CD in question where some images were also

24  recovered; isn't that correct?

25  A.  **That is correct.**

1  Q.   Now, on that CD, is there any lettering, or any sort of

2  imagery that would indicate that there is child pornography on

3  that CD?

4  A.   **You mean on the actual cover of the CD?**

5  Q.   Yes.

6  A.   **Yes -- no.**

7  Q.   Is there any handwriting or any sort of evidence that that

8  CD belongs to Manuel Perez Gonzalez?

9  A.   **On the actual surface of, face value, no.**

10  Q.   And this CD, where was it located?

11  A.   **In the entertainment unit.**

12  Q.   Okay.

13  A.   **In his bedroom.**

14  Q.   Where there were several other CDs, correct?

15  A.   **That is correct.**

16  Q.   Okay.  Now, regarding allegations of sexual abuse, who made

17  these allegations to you or who informed you of these

18  allegations?

19  A.   **German Lagos.**

20  Q.   Okay.  And what is his relation to my client?

21  A.   **He is the son of your client's live-in girlfriend.**

22  Q.   What exactly did he tell you about these allegations?

23  A.   **That there were two separate allegations of Mr. Perez**

24  **inappropriately touching minors.**

25  Q.   Now did you verify with law enforcement if these

1  allegations were ever reported?

2  A.  **Yes.**

3  Q.  And?

4  A.  **We did not find -- as of today we do not have any evidence**

5  **that those two allegations that German reported existed.**

6  Q.  Okay.  Did Mr. Lagos tell you who the alleged victim was in

7  the case or is it -- are you saying it is two separate cases?

8  Two separate allegations?

9  A.  **Correct.**

10  Q.  Did he tell you who the victims were in those allegations?

11  A.  **Yes.  The first one was a cousin that had twin daughters**

12  **and the other one was a cousin with another daughter.**

13  Q.  Were you able to speak to these alleged victims?

14  A.  **I, personally, did not speak to them, but I had police**

15  **speak to the first one, which was the twins.**

16     **I was informed there was no finding of the allegation.  And**

17  **the second allegation we were never able to determine who that**

18  **other cousin and --**

19        THE COURT:  Speak up, sir.  Speak up.  Get closer.

20        THE WITNESS:  I'm sorry.

21  A.  **And the second allegation we were never able to determine**

22  **who the actual cousin and minor was.**

23  BY MR. SARMIENTO:

24  Q.  So all you have is something said by Mr. Lagos?

25  A.  **That is correct.**

1   Q.   And you don't know how the relationship between my client

2   and Mr. Logos is, if it's --

3   A.   **I know they go to work together every morning.**

4        **Well, I should say, the day of the search warrant, as of**

5   **the day of the search warrant they were going to work together.**

6   Q.   Okay.  Now, my client was never charged for any of these

7   allegations; is that correct?

8   A.   **No.**

9   Q.   And no charges and then, therefore, nothing was ever filed

10  against him criminally for these allegations?

11  A.   **No.**

12  Q.   Or civilly?

13  A.   **Civilly I don't know.**

14       MR. SARMIENTO:  Okay.  I have no further questions,

15  Your Honor.

16       THE COURT:  Okay.  Counsel?

17       MR. VAZQUEZ:  Yes, Your Honor.

18                     REDIRECT EXAMINATION

19  BY MR. VAZQUEZ:

20  Q.   Agent, do you know how old the son, Ishmael, is?

21  A.   **At the time, I believe -- right now I believe he is around**

22  **ten years old.**

23  Q.   So the computer is registered to a ten-year-old?

24  A.   **Yes.  That is what it appears to be.**

25  Q.   And inside the computer is there any indicia that the

1  Defendant is an active user?

2  A.  **Yes.**

3  Q.  Such as?

4  A.  **There were Skype chats and Skype messaging from a username**

5  **that we have subpoenaed from Skype that comes back to Manuel**

6  **Perez.**

7       **There is also the software programming that was purchased.**

8  **And there is also downloading of child pornography within**

9  **minutes and hours of the Skype chats and messaging.**

10 Q.  You addressed with Defense counsel about the backup of CDs.

11 Do you recall that line of questioning?

12 A.  **Yes, sir.**

13 Q.  Did you find any indicia that this Defendant had anything

14 to do with the creation of that CD?

15 A.  **Yes, the actual file folder.  Once you put the CD inside a**

16 **media computer, it is labeled as Manny-PC and it gives a**

17 **specific date.  Within those folders there are also photos and**

18 **e-mails of Mr. Perez.**

19 Q.  Okay.  In the course of this investigation, did you also

20 search a desktop computer inside the bedroom that belonged to

21 Miss Mayorga?

22 A.  **Yes.**

23 Q.  And did that have any indicia of child pornography?

24 A.  **At this moment, no.**

25       MR. VAZQUEZ:  I have nothing further, Your Honor.

1          THE COURT:  Okay.  Counsel, anything else from you,

2  sir?

3          MR. SARMIENTO:  No, Your Honor.  No more questioning

4  of the witness.

5          THE COURT:  Okay.  So you may step down.

6          Government, argument, please.

7          MR. VAZQUEZ:  Your Honor, based on the statutory

8  presumption that is at issue and the facts of this case, the

9  Defendant has compiled an amount of child pornography in his

10  computer.  He has backed it up.

11          These events also show that he has worked with other

12  people in the course of borrowing other laptops to compile his

13  child pornography collection.

14          In the course of the investigation, he has used -- he

15  has gone into disputes with people inside his residence, into a

16  physical altercation.  And he has been able to use that

17  altercation to prevent the disclosure of his observation of

18  child pornography.

19          He has ties outside of the country.  He has shipped,

20  according to agents, evidence of child pornography outside of

21  the country.

22          I think that based on these circumstances that the

23  presumption has not been rebutted and the Defendant should be

24  detained pending trial.

25          THE COURT:  As a risk of flight or danger to the

1   community?

2        MR. VAZQUEZ:  As a risk of flight and a danger to the

3   community.

4        THE COURT:  What is the risk of flight based on?

5        MR. VAZQUEZ:  The risk of flight is that the Defendant

6   has documented ties inside of the Pretrial Services Report that

7   show that he has contacts outside of the United States.

8        It shows the factual background showing that he has,

9   in fact, shipped evidence, potential evidence of his downloads

10  of child pornography outside of the United States.

11       And it shows his unappreciation for the value of

12  leaving the jurisdiction or having evidence leaving the

13  jurisdiction.  And I think that justifies the upholding of the

14  statutory presumption.

15       THE COURT:  What about danger?

16       MR. VAZQUEZ:  The statutory presumption speaks for

17  itself.

18       In addition to that, the Defendant has -- for purposes

19  of pretrial detention, there are witnesses who have made

20  allegations against him which are great.

21       And I think the combination of his collection of child

22  pornography, his diversification of these materials, and with

23  even the specter of these allegations, there is no basis

24  respectfully on the view of the Government to think that the

25  presumption has been rebutted.

1          THE COURT:  Okay.  Counsel?

2          MR. SARMIENTO:  Judge, I disagree.

3          I feel that there is no direct evidence linking my

4    client to these images.

5          THE COURT:  Speak up, please.

6          MR. SARMIENTO:  I disagree.

7          I don't believe there is any direct evidence linking

8    my client to these allegations.

9          My client has denied knowledge or possession of these

10   images.  The computer in question doesn't belong to my client.

11   It is not registered to him.

12         There may be evidence that he used the computer, but

13   it does not belong to him.  No one has seen him using the

14   computer.  There are these loose allegations that at some point

15   in the past they saw him viewing the images, not the images in

16   question in this case, but some time in the past they saw him

17   viewing some images.

18         Judge, I feel that we have rebutted the presumption.

19   My client has been living in the United States for 18 years and

20   has been granted political asylum.  He is originally from

21   Nicaragua.

22         He has left the country one time in 2011 to go to

23   Guatemala to visit a sister, but otherwise he has been a

24   consistent resident of this state and the country, therefore.

25         He has no criminal history.  He has been arrested for

1  misdemeanor law violations.  And however, he has never been

2  convicted for anything.

3         He has two minor children that live in the -- that

4  depend on his finances for support.  He lives currently with

5  his girlfriend, Mayorga Mueller.  He has a sister and a mother

6  who both live in South Florida.  Carmen Gonzalez and Angela

7  Perez, both live in Hollywood, Florida.

8         He has a bother named Roberto Perez living in Miami,

9  Florida.  He has another brother named Miguel Perez living in

10  the State of Georgia.  And he has eight nephews living in South

11  Florida.

12        Currently, Judge, there are no children residing in

13  the residence where he would be residing if you were to grant

14  him some type of bond in this case.

15        I don't see the risk of flight, Judge, and I don't see

16  the danger to the community.  The Government mentioned

17  allegations of inappropriate touching.  However, it doesn't

18  appear that any of that information led anywhere.

19        There is no evidence that he was ever charged.  There

20  is no evidence of ever speaking directly with any alleged

21  victims.  What we have is some hearsay, double hearsay, in that

22  regard.

23        So I ask that you do consider some sort of bond,

24  understanding that the Adam Walsh provisions would also have to

25  be in place.  And if you were to agree to some sort of bond,

1  Your Honor, I would ask that you give him permission to leave

2  his residence just for work purposes and, obviously, legal

3  visits and medical issues that may present themselves.

4           And for the record, I would like to point out that his

5  girlfriend is present, as well as his mother, and other family

6  members are in the court this morning, Your Honor.

7           MR. VAZQUEZ:  Your Honor, if I may?

8           THE COURT:  Yes.

9           MR. VAZQUEZ:  Your Honor, my understanding after

10 conferring with the case agent is that he has not been granted

11 political asylum.

12          And also has been charged -- just a correction from

13 what Mr. Sarmiento said -- he has previously been charged and

14 the case was dismissed, but with an aggravated battery which is

15 a felony offense in 2009.

16          THE COURT:  All right.

17          MR. VAZQUEZ:  And the reason why he was not granted

18 political asylum while these cases are dismissed, one of the

19 grounds was the amount of arrests.  And certainly, he has a

20 significant felony accusation that was against him.

21          The risk of flight, I think it is patent here that

22 with the recent count, he faces a 60-month minimum mandatory

23 sentence.  And if that is something that the Grand Jury

24 returns, a person who has never been incarcerated before,

25 facing at minimum one count of 60 months minimum mandatory has

1    a real and significant reason to leave the jurisdiction.

2            MR. SARMIENTO:  Judge, if I may, just one last point?

3            THE COURT:  Go ahead.

4            MR. SARMIENTO:  Judge, my client was aware of these

5    allegations in October of 2015 where over five months ago he

6    quickly retained my services.  He has had ample opportunity to

7    flee the jurisdiction and he has stand firm.

8            He is prepared to defend himself against these

9    allegations.  And I think that that is strong evidence

10   indicating that there is no risk of flight in this case.

11           THE COURT:  Okay.  Government, tell me more about this

12   contact that he had with, I believe, you said two children.

13   When did that occur and what was made of it?

14           MR. VAZQUEZ:  May I confer with the agent so that I

15   could --

16           THE COURT:  Sure.

17           MR. VAZQUEZ:  Your Honor, for the one event that we

18   know the most about is with the --

19           THE COURT:  There are two events?

20           MR. VAZQUEZ:  There are two events that were raised to

21   us, but one where there are two twin minors --

22           THE COURT:  So you are saying you are only going to

23   try to prove one and not two?

24           MR. VAZQUEZ:  I am going to try to tell the Court the

25   one I know the most about, if I may?

1          THE COURT:  Go ahead.

2          MR. VAZQUEZ:  I believe within one year or two years

3   there was a family event.

4          The grandmother, who received a report from these

5   children, is that they were inappropriately touched and that

6   was the extent of what the witnesses know about that event.

7          The other event is beyond my ability to give any

8   degree of precision on, but it was something that we heard.

9   And for the purposes of the bond proceeding --

10         THE COURT:  So the grandmother told someone and

11  someone told your agent?

12         MR. VAZQUEZ:  Correct.

13         THE COURT:  And you do not want to tell me who that

14  person was?

15         MR. VAZQUEZ:  That was German Lagos.

16         THE COURT:  A family member?

17         MR. VAZQUEZ:  Yes.

18         THE COURT:  And when did it occur, about a year ago?

19  Two years ago?

20         MR. VAZQUEZ:  Within two years.

21         THE COURT:  Within two years?

22         MR. VAZQUEZ:  Yes.

23         THE COURT:  And where is the grandmother?

24         MR. VAZQUEZ:  She's present and I understand that

25  she's physically --

1          THE COURT:  She's what?

2          MR. VAZQUEZ:  She is present in court, Your Honor, but

3    my understanding is that her ability to recall is compromised.

4          THE COURT:  Okay.  Anything else?

5          MR. VAZQUEZ:  No, Your Honor.

6          THE COURT:  Anything else from you, sir?

7          MR. SARMIENTO:  Judge, something just -- I was

8    reminded of something regarding these allegations.

9          I've been informed that these allegations were made.

10   However, the mother of the alleged victim was a woman who was

11   an alcoholic, lost custody of these children because of that.

12   So I don't know -- we have to really assess the credibility of

13   the allegation.

14         Obviously, it is only hearsay at this point, but we do

15   know one thing for sure, there was never an arrest.  There was

16   never anyone charged.  It never led anywhere.  In fact, all it

17   was, was an allegation.

18         THE COURT:  Okay.  Thank you.

19         The accused, in this case, has been charged with a

20   violation of Title 18, United States Code 2252, which is the

21   possession of child pornography.

22         The evidence, as proffered by the Government, seems to

23   be substantial.  More specifically, not only was he in

24   possession, it appears based upon the information, that he is

25   addicted to child pornography.

1            Specifically, there was a search warrant on the

2   residence that he occupied, which came back positive with

3   respect to the presence of child pornography on the computer.

4            He borrowed another computer from a friend,

5   apparently, and on that computer it was used for child

6   pornography.  Apparently, one of the defenses that he had back

7   then was that the computer belonged to his son and he did not

8   know anything about the child pornography.

9            Based upon what I have heard today, I choose to

10  disbelieve that.  Apparently, also, there was forensic analysis

11  and there is some information with respect to this particular

12  person sending child pornography information, shipping it

13  outside the country.

14            Apparently, there were family members who had

15  confronted him about the use of child pornography.  And

16  apparently, one of those confrontations led to a fistfight.

17            There are also allegations that there was an unlawful

18  touching of, I believe, two children.  And it appears that the

19  Government is trying to make a connection between that and the

20  child pornography, but the information presented by the

21  Government on that issue is very shaky.  Extremely shaky.

22            Is he a danger to the community?  Just the possession

23  of child pornography does not necessarily make him a danger.

24  If there was more merit to the issue concerning the touching of

25  children that clearly would make him a danger, but that

1    information is just not substantive at this time.

2           It appears that the Government, even if they were to

3    go to trial on that issue, would not be able to prove that

4    based upon his statement -- the Government's statement -- that

5    the witnesses, one witness is no longer available.  And there

6    is a witness who has a difficulty recalling the incident.

7           Having said that and looking at the Pretrial Services

8    Report, I do not believe that he is a danger to the community.

9           With respect to risk of flight, it is quite apparent

10   that if he wanted to leave, he could have left by now.  He has

11   known about this issue for quite some time and he has stayed

12   here to confront the people who have accused him.  As such, the

13   Court is going to give him a bond.

14          Government, what do you recommend?

15          MR. VAZQUEZ:  Your Honor, the Government recommends a

16   $125,000 corporate surety bond.

17          THE COURT:  Okay.  What conditions?

18          MR. VAZQUEZ:  That the Defendant be electronically

19   monitored.  That his bond be controlled by the Adam Walsh Act

20   provisions as specified and recommended by the Pretrial

21   Services Report and that the Defendant have no contact with

22   children.

23          I believe that is subsumed with the Adam Walsh Act

24   provisions.  During the pendency of the litigation, surrender

25   all travel passports, which is traditionally a standard

1  condition.

2          And have limited opportunity simply to leave his home

3  and to go to work, along with the general standard conditions

4  of surrendering any weapons, or not have any contact with

5  weapons.

6          THE COURT:  Okay.  Pretrial Services, is there

7  anything you would like to add?

8          THE PROBATION:  He has no landline.

9          THE COURT:  Okay.

10          THE PROBATION:  We recommend a cell phone be installed

11  before a landline was to be installed.

12          THE COURT:  Okay.  Anything else?

13          THE PROBATION:  Pretrial pending.

14          THE COURT:  There are a bunch of conditions.

15          THE PROBATION:  Do you want me to read them off?

16          THE COURT:  Yes, make the record.  Go ahead.

17          THE PROBATION:  That he report to Pretrial Services as

18  directed.  That he surrender his travel documents to Pretrial

19  Services and not obtain any new documents.

20          That he refrain from possessing a firearm.  That he

21  have no contact with victims or witnesses.  That he participate

22  in the Specialized Sex Offender evaluation and treatment

23  programs.  That he participate in the location monitoring

24  program with allowances to leave for specific reasons, work --

25          THE COURT:  Yes.

1          THE PROBATION:  -- court visits for court appearances

2    that whole -- as he stated, the Defendant does not have a

3    landline.

4          Would you want a cell unit in place until a landline

5    is installed or would you rather add a land line in place

6    before he is released?

7          THE COURT:  Government, do you have a preference?

8          MR. VAZQUEZ:  Yes.  I would prefer that a cell unit be

9    installed until he is released.

10         THE COURT:  Okay.

11         THE PROBATION:  And the Defendant shall not possess

12   any Internet capability devices.

13         That he be prohibited from establishing or maintaining

14   an e-mail account, or a social media account.

15         That he not be permitted to enter any local, or

16   federal, or private library.

17         That he be prohibited from viewing, owning, possessing

18   any obscene pornographic or sexually stimulating visual

19   materials.  And that he submit to a search of his person and

20   his property by Pretrial Services.

21         THE COURT:  Okay.  I disagree with the recommendation

22   from the Government with respect to the amount of the bond.  It

23   should be $175,000 as opposed to $150,000.

24         Anything else?

25         MR. VAZQUEZ:  Not from the United States, Your Honor.

1              THE COURT:  Okay.  Thank you.

2              THE COURTROOM DEPUTY:  Are you filing permanent or --

3              MR. SARMIENTO:  Judge, the matter is also set today

4    for Re: Attorney.

5              However, I am not prepared to file a permanent

6    appearance this morning.  I don't know how Your Honor would

7    handle that.  Do you want to reset it for next week?

8              THE COURT:  Sure.

9              MR. SARMIENTO:  Thank you, Your Honor.

10             THE COURT:  Okay.  Thank you.

11             THE COURTROOM DEPUTY:  Reset for the 22nd at 10:00.

12             MR. SARMIENTO:  Thank you, Your Honor.

13             (Thereupon, the proceedings concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2                          CERTIFICATE

3

4           I hereby certify that the foregoing transcript is an

5   accurate transcript of the audio taped proceedings in the

6   above-entitled matter.

7

8

9

10
    04/07/17                    Bonnie Joy Lewis,
11                     Registered Professional Reporter
                            CASE LAW REPORTING, INC.
12                         7001 Southwest 13 Street,
                         Pembroke Pines, Florida 33023
13                             954-985-8875

14

15

16

17

18

19

20

21

22

23

24

25